**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **COREY LOCKETT,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SERGEANT HINKLE,**<br>**SERGEANT PLATTE,**<br>**LT SELBY,**<br>**JUSTIN DURHAM,**<br>**C/O CLARK, and**<br>**LT SCHRADER,**<br><br>**Defendants.** | **Case No. 26-cv-00585-RJD** |

# MEMORANDUM AND ORDER

**MAGISTRATE JUDGE REONA J. DALY:**

Plaintiff Corey Lockett, an inmate of the Illinois Department of Corrections who is currently incarcerated at Lawrence Correctional Center, brings this civil action pursuant to 42 U.S.C. §1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v.*

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections and this Court.

*Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

Plaintiff alleges the following: On July 6, 2025, Sergeant Schrader falsely alleged that Plaintiff had threatened her, and the emergency response team was called to escort Plaintiff to restricted housing. (Doc. 1, p. 6). While Plaintiff was being escorted, Lieutenant Yates "ruffed up" Plaintiff and "took" him to the ground. (*Id.*). Lieutenant Taylor and another officer then assisted in restraining Plaintiff. (*Id.*). Once Plaintiff was on his stomach on the ground, Sergeant Schrader placed Plaintiff's legs into a "folding position" and pressed Plaintiff's right shin against his left calf, kneeling on his legs with all her weight. (*Id.*). The position caused Plaintiff excruciating pain, and so he forcefully separated his legs as a reflex to the pain. (*Id.*). Following the incident, Plaintiff was issued a disciplinary report by Sergeant Schrader and charged with threatening and intimidating staff and a 102(a) violation for staff assault with injury. (*Id.* at p. 6, 9). In the disciplinary report, Sergeant Schrader recorded that Plaintiff had broken her wrist by kicking her hand twice. (*Id.*).

Plaintiff was then taken to crisis watch, where Officers Durham and Cook conducted a strip search. (Doc. 1, p. 7). During the search, Plaintiff asked Durham if he needed to relinquish his religious chain necklace, and Durham told Plaintiff he could keep the necklace. (*Id.*). Plaintiff was taken to his cell. (*Id.*). Minutes later, Sergeant Hinkle came to Plaintiff's cell and said, "Give me that stupid ass Muslim chain." (*Id.*). Plaintiff responded that he had not done anything wrong and that Officers Durham and Cook allowed him to keep it. (*Id.*). Sergeant Hinkle told Plaintiff that he had ten seconds to

produce the necklace or Hinkle would spray him with mace. (*Id.*). Before Plaintiff could respond, Sergeant Hinkle yelled that Plaintiff was retrieving something from his rectum, and "we gotta save his life!" (*Id.*). As Hinkle was attempting to spray Plaintiff with mace, Plaintiff pulled his suicidal smock over his head to prevent mace from hitting his face. (*Id.*). After spraying Plaintiff's naked body, Hinkle told Plaintiff that he was out of mace and instructed Plaintiff to "cuff up." (*Id.*). Plaintiff lowered his smock and began walking towards the door, and Hinkle sprayed Plaintiff again with mace. (*Id.*). This time spraying Plaintiff's genitals. (*Id.*). In response, Plaintiff turned his back towards the door to protect himself, and Hinkle sprayed Plaintiff's back side with mace. (*Id.*). Hinkle continued to spray Plaintiff with mace until the mace can was empty. (*Id.*). Plaintiff was placed in a shower, but the water did not work so he was unable to rinse the mace from his body. (*Id.*). Plaintiff remained in a crisis cell for five days before he was able to shower. (*Id.*).

While on crisis watch, Correctional Officer Dare delivered four disciplinary reports. (Doc. 1, p. 8). Three of the disciplinary reports consisted of multiple pages, but Plaintiff only received the first page of each. (*Id.*). On July 19, 2025, Plaintiff's disciplinary hearing was held by a "bogus night shift committee" at 9:00 p.m. on a Saturday, when the administration staff was not present at the facility. (*Id.*). The Adjustment Committee Officer was Sergeant Platte. (*Id.*). Sergeant Platte had also been the officer who investigated the disciplinary reports. (*Id.*). During the hearing, Plaintiff expressed his concerns about Sergeant Platte's lack of impartiality and that he had not received the full disciplinary reports prior to the hearing. (*Id.*). Sergeant Platte acknowledged Plaintiff's issues but did not formally document them in the record. (*Id.*). She also did not conduct

a proper hearing or review video footage of the alleged incidents. (*Id.*). Plaintiff was found guilty on all charges that same night. (*Id.*). Sergeant Platte then issued a summary report, and on the report, she forged the signature of an officer who was not even employed at Lawrence Correctional Center at the time of the hearing. (*Id.*). Plaintiff filed grievances about the forged document, and all disciplinary reports were eventually expunged. (*Id.*). However, by the time the charges were expunged, Plaintiff had already served fifty-eight days in restricted housing. (*Id.* at p. 9).

## PRELIMINARY DISMISSAL

As a preliminary matter, in the Complaint Plaintiff includes allegations against individuals who are not identified as defendants in the case caption. The Court will not treat parties not listed in the caption as defendants, and any claims against them are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

The Court also dismisses any claim intended to be brought against Officer Durham. Plaintiff's only allegation against Durham is that Durham conducted a strip search of Plaintiff and then allowed Plaintiff to keep his religious necklace. (Doc. 1, p. 7). Plaintiff does not articulate what aspect of Durham's conduct he believes arose to a constitutional violation, and the fact that a strip search was conducted does not by itself establish an Eighth Amendment violation. *See Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (observing that "[t]here is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation"). Accordingly, Durham will be

dismissed from this case.

## Discussion

Based on the allegations and Plaintiff's articulation of his claims in the Complaint, the Court designates the following counts:

**Count 1:** Eighth Amendment claim against Schrader for the use of excessive force on July 6, 2025.

**Count 2:** Eighth Amendment claim against Hinkle for the use of excessive force on July 6, 2025.

**Count 3:** Fourteenth Amendment claim against Hinkle, Schrader, Platte, Selby, and Clark for punishing Plaintiff without due process of law.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Counts 1 and 2

"Correctional officers violate the Eighth Amendment when they use force maliciously and sadistically for the very purpose of causing harm, but not when they apply it in good faith to maintain or restore discipline." *Jackson v. Angus*, 808 F. App'x 378, 382 (7th Cir. 2020) (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). *See also Rice ex rel. Rice v. Corr. Medical Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (use of pepper spray justified when inmate refused to comply with order to step out of cell).

[2] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Plaintiff has sufficiently pled facts establishing that both Schrader and Hinkle used force against him for no penological purpose. *See Fillmore v. Page,* 358 F.3d 496, 504 (7th Cir. 2004) ("[i]nfliction of pain that is totally without penological justification is *per se* malicious"). Thus, Count 1 will proceed against Schrader and Count 2 will proceed against Hinkle for the use of excessive force against Plaintiff on July 7, 2025.

**Counts 3**

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). When an inmate raises a procedural due process claim based on false charges, the Court undertakes a two-part analysis. *Id.* The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process he was afforded was constitutionally deficient. *Id.* (*citing Hess v. Bd. of Trs. of S. Illinois Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)).

A prisoner's liberty interest is implicated by prison discipline when the discipline "imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ealy v. Watson*, 109 F.4th 958, 964 (7th Cir. 2024) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). To show a hardship sufficient to create a protected liberty interest, an inmate must demonstrate that his punishment was a dramatic departure from basic conditions of prison life. *See Sandin*, 515 U.S. at 486; *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019) ("If the disciplinary measures do not 'substantially worsen the conditions of confinement' of an inmate, then he has not been deprived of a protected liberty interest.") (quoting *Miller v. Dobier*, 634 F.3d 412, 414–15 (7th Cir. 2011)).

When analyzing whether disciplinary segregation implicates a protected liberty interest, courts consider "the 'combined import of the duration of the segregative confinement and the conditions endured.'" *Ealy*, 109 F.4th at 965 (quoting *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013)).

As pled, Plaintiff has not provided sufficient facts to allow the inference that he was subjected to atypical and significant hardship while in restrictive housing. Plaintiff states that because of the false disciplinary reports and subsequent faulty disciplinary hearing, he was held in restrictive housing for fifty-eight days without certain privileges. However, in general, inmates have no liberty interest in avoiding short-term transfer to segregation, even when they are subjected to harsher conditions as a result. *See, e.g.*, *Townsend v. Fuchs*, 522 F.3d 765, 766 (7th Cir. 2008) (no liberty interest for 60 days in segregation); *Lekas v. Briley*, 405 F.3d 602, 608–09 (7th Cir. 2005) (no liberty interest for 90 days in segregation); *Smith v. Akpore*, 689 F. App'x 458, 459–60 (7th Cir. 2017) (no liberty interest in four months' combined investigative and disciplinary segregation). Furthermore, there is no liberty interest implicated in loss of privileges. *See Thomas v. Ramos*, 130 F.3d 754, 762 (7th Cir. 1997) n 8 (7th Cir. 1997 (collecting cases). Because Plaintiff does not allege he was deprived of a liberty interest that required due process protections, Count 3 is dismissed.

## Disposition

For the reasons stated above, the Complaint survives preliminary review pursuant to 28 U.S.C. § 1915A. **COUNT 1** shall proceed Schrader. **COUNT 2** shall proceed against Hinkle. **COUNT 3** is dismissed without prejudice. Because there are no surviving claims

against Platte, Selby, Durham, and Clark, the Clerk of Court is **DIRECTED** to terminate them as parties on the docket.

The Clerk of Court shall prepare for Hinkle and Schrader: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Because this suit addresses claims involving bodily harm, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**Pursuant to Local Rule 8.2(b), Defendants need only respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time his application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in the action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 23, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.